

**SIGNED this 13 day of January, 2016.**

_____
John T. Laney, III
**United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| In re: | * | |
| TOMMY E. BREEDLOVE, | * | Chapter 7 |
|     Debtor, | * | Case Number: 14-30634- JPS |
| | * | |
| KENNETH STOREY, | * | |
| | * | |
|     Plaintiff, | * | |
| | * | Adversary Proceeding |
| v. | * | Number: 14-03053 |
| | * | |
| TOMMY E. BREEDLOVE, | * | |
| | * | |
|     Defendant. | * | |

_____

### MEMORANDUM OPINION

This matter comes before the Court on a Motion to Dismiss for Failure to State a Claim

upon which Relief may be Granted, Motion for Judgment on the Pleadings or Alternatively

1

Motion for Summary Judgment (collectively the "Motion for Summary Judgment")[1] filed by

Tommy E. Breedlove (the "Defendant") and a Cross Motion for Summary Judgment filed by

Kenneth Storey (the "Plaintiff"). Additionally, the Plaintiff moved for leave to amend the

complaint. The Court has carefully considered the pleadings and briefs, the parties' oral

arguments, and the applicable statutes and case law. For the reasons set forth below, the Court

will DENY the Defendant's Motion for Summary Judgment. The Court will GRANT the

Plaintiff's Motion for Leave to Amend the Complaint and GRANT in part the Plaintiff's Cross

Motion for Summary Judgment.

**Procedural History**

This Adversary Proceeding arises out of the underlying bankruptcy case of the

Defendant. On June 16, 2014 (the "Petition Date"), Breedlove sought protection under Chapter

7 of the Bankruptcy Code. The Plaintiff commenced this Adversary Proceeding on October 15,

2014, with the filing of the complaint (the "Original Complaint") against the Defendant. In the

Original Complaint, the Plaintiff alleges the Defendant committed objectionable acts under 11

U.S.C. § 727(a) warranting the Court denying the Defendant a discharge. On November 11,

2014, the Defendant responded by filing an answer requesting the following: the complaint be

dismissed for failure to state a claim, and other reasons; the Plaintiff's relief be denied; the

Defendant receive a discharge of pre-petition debt; and any relief the Court deems appropriate.

On April 9, 2015, the Court entered an order extending the deadlines for discovery and other

Federal Rule of Civil Procedure ("Rule") 16 matters until May 6, 2015. On May 7, 2015, the

Court entered another order extending the deadlines for discovery and other Rule 16 matters until

---

[1] The Defendant filed a consolidated motion titled "Motion to Dismiss for Failure to State a Claim upon which Relief may be Granted, Motion for Judgment on the Pleadings or Alternatively Motion for Summary Judgment and Brief in Support Thereof."

July 6, 2015.  On July 2, 2015, the Plaintiff filed an amendment to the Original Complaint (the "Amended Complaint").  On July 3, 2015, the Defendant filed his Motion for Summary Judgment, supporting brief, and exhibits.  The Defendant filed an answer to the Amended Complaint on July 7, 2015.  The Plaintiff filed his Cross Motion for Summary Judgment, supporting brief, exhibits, and statement of uncontested facts on August 7, 2015.  The Defendant filed a statement of uncontested facts and a response to the Plaintiff's statement uncontested facts on September 2, 2015.  On September 22, 2015, the Plaintiff filed a motion to strike the Defendant's statement of uncontested facts and a motion to strike the Defendant's response to the Plaintiff's statement of uncontested facts (the "September 22 Motions").  The Plaintiff withdrew the September 22 Motions on October 1, 2015 through a Notice of Agreement submitted by both parties.  The parties agreed that "the Court should decide the pending motions for summary judgment on the merits rather than on the issue of whether pleadings were timely filed." (Notice of Withdrawal, ECF No. 99).[2]  On October 6, 2015, the Court heard oral arguments on the parties' motions for summary judgment at the United States Bankruptcy Court in Macon, Georgia (the "Hearing").  At the Hearing, the Plaintiff moved for leave to amend the Original Complaint ("Motion for Leave").

### Procedural Issues

Both parties have raised procedural issues, alleging procedural insufficiencies in each other's filings with the Court.  The issues pertain to the Defendant's Motion to Dismiss and the Plaintiff's Motion for Leave.  The Court will address the procedural issues before discussing the merits of the motions for summary judgment.

---

[2] The Plaintiff also filed a Motion to Strike Defendant's Pending Motion to Dismiss and to Strike Motion for Summary Judgment on August 7, 2015.  That motion stated that the Defendant's Motion for Summary Judgment was insufficient as a matter of law.  The parties agreed in the Notice of Agreement to have the Court decide the motions for summary judgment based on their merits.  The Court has honored their request.

I.      Motion to Dismiss

The Defendant requests in his answer that the Plaintiff's Original Complaint be dismissed

for failure to state a claim.  The Answer was the first response filed by the Defendant after the

filing and service of the Original Complaint.  On July 3, 2015, the Defendant filed a motion

raising the defense of failure to state a claim upon which relief may be granted.  Despite an

agreement by the parties to have the Court decide the motions for summary judgment on the

merits, the Plaintiff argued at the Hearing that any motion to dismiss filed by the Defendant was

untimely and should be dismissed because such a motion is a pre-answer motion under Rule

12(b).

Rule 12(b) states that "[e]very defense to a claim of relief in any pleading must be

asserted in the responsive pleading if one is required."[3]  Furthermore, Rule 12(b)(6) provides that

"a party *may* assert" the defense of failure to state a claim upon which relief may be granted by

motion.  However, Rule 12(b)(6) does not *require* a defense of failure to state a claim to be

asserted by motion; it requires parties asserting the defense by a motion to file the 12(b)(6)

motion before the responsive pleading.  In *Whitehurst v. Wal-Mart Stores East, L.P.*, the United

States Court of Appeals for the Eleventh Circuit held that the defendant "preserved the defense

of failure to state a claim by raising it in its answer," but the defendant could not assert such a

defense in a motion because they already filed an answer. 329 Fed. Appx. 206, 208 (11th Cir.

2008).  The Eleventh Circuit stated that the motion was, therefore, untimely. *Id.*  However, the

court determined that it may construe the 12(b)(6) motion as a motion for judgment on the

pleadings, which was timely. *Id. See Garrett v. Unum Life Ins. Co. of America*, 427 F. Supp.2d

1158, 1160-61 (M.D. Ga. 2005) ("[B]ecause Defendant filed its motion [to dismiss] after filing

---

[3] Rule 12(b)(6) is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure ("FRBP")
7012.

its responsive pleading . . ., the Court will treat Defendant's motion as a Motion for Judgment on the Pleadings.").

A motion for judgment on the pleadings is timely if it is filed after the close of pleadings and early enough as not to delay trial.  The pleadings are closed for the purposes of Rule 12(c) once the defendant answers the plaintiff's complaint. *McGuigan v. Conte*, 629 F. Supp.2d 76, 80 (D. Mass. 2009) (citing *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005)).  A motion to dismiss and a motion for a judgment on the pleadings are "functionally identical." *Henson v. Fidelity Nat'l Fin., Inc.*, 18 F. Supp.3d 1006, 1009 (C.D. Cal. 2014).  The similarity shared between the two types of motions is why it is common practice for courts to consider a motion for a judgment on the pleadings filed before a defendant's answer as a 12(b)(6) motion and a 12(b)(6) motion filed after the defendant's answer as a motion for judgment on the pleadings. *McGuigan*, 629 F. Supp.2d at 80 & n. 4.

The Defendant asserted the defense of failure to state a claim in his answer, therefore, preserving the defense.  Any 12(b)(6) motion filed thereafter would have been untimely. However, the Defendant's Motion to Dismiss may be interpreted as a Rule 12(c) motion for judgment on the pleadings due in part because the Defendant filed a consolidated motion which included both a 12(b)(6) motion, a motion for judgment on the pleadings, and a motion for summary judgment.

On May 6, 2015, the Court extended the deadline for Rule 16 matters for 60 days from that date.  The Plaintiff argues that any motion for judgment on the pleadings was untimely because the Defendant filed his motion before the time set by the May 6 Order had expired.  The Court disagrees.  The Defendant filed the motion after he filed his answer.  Therefore, the

Defendant's Motion to Dismiss interpreted as a motion for judgment on the pleadings was timely, and the defense of failure to state a claim was timely.

II.     Eleventh Circuit Decisions on Motions for Leave to Amend Complaint

At the Hearing, the Defendant opposed the Plaintiff's Motion for Leave on the basis that the Plaintiff's amendment was untimely because he filed the Amended Complaint eight months after he filed the Original Complaint. Additionally, it is the Defendant's position that both the Original Complaint and the Amended Complaint are subject to dismissal for failure to state a claim upon which relief may be granted. The Defendant asserted that defense as to the Amended Complaint both in his answer to the Amended Complaint and at the Hearing.

Rule 15[4] "governs amendment of pleadings before judgment is entered." *Ball v. JPMorgan Chase Bank, N.A.*, 2014 WL 297907, at *2 (M.D. Ga. Jan. 27, 2014). Subsection (a)(2) states that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Accordingly, "unless a substantial reason exists to deny leave to amend," the bankruptcy court should allow the motion for leave because "the discretion of the [trial] court is not broad enough to permit denial." *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989). Additionally, a party should be granted leave to amend so long as the non-moving party is not unduly delayed or prejudiced by the amendment, or the moving party is not acting in bad faith. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Eleventh Circuit has held that a trial court must grant a plaintiff an opportunity to amend his complaint before it may grant a defendant's motion for summary judgment that asserts the complaint failed to state a claim. *Silva v. Bieluch*, 351 F.3d 1045, 1048-49 (11th Cir. 2003). The court must grant a motion for leave if the complaint may be so drafted as to state a claim

---

[4] Rule 15(a)(2) is made applicable to adversary proceedings by FRBP 7015.

upon which relief may be granted. *Silva*, 351 F.3d at 1048-49.  The Eleventh Circuit in *Silva*

followed the decision in *Bank v. Pitt*, which required the court to grant a motion to amend "even

where the plaintiff never seeks leave to amend." 928 F.2d 1108, 1112 (11th Cir. 1991).  Fearing

that such plaintiff-friendly precedent provided for "two bites at the apple," the Eleventh Circuit

overruled *Bank* and instead held that a trial court is not required to grant a plaintiff leave to

amend where the plaintiff made no effort to request leave. *Wagner v. Daewoo Heavy Indus. Am.*

*Corp.*, 314 F.3d 541, 542-43 (11th Cir. 2002).

The court shall not grant a motion for leave to amend a complaint when such an

amendment would be futile.  An amendment is futile when the complaint as amended would still

be subject to dismissal. *Brooks v. Warden*, 800 F.3d 1295, 1300 (11th Cir. 2015); *Cockrell v.*

*Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).  However, the court determines the issue of

futility in the light most favorable to the plaintiff.  To determine whether the amendment to the

complaint is futile, the Court must address the Defendant's defense of failure to state a claim and

the relevant legal standard for analyzing such a defense.

III.    12(b)(6) Standard

When ruling on a 12(b)(6) motion, the court must accept all the factual allegations plead

in the complaint as true and view the complaint in the light most favorable to the plaintiff.

*Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Day v. Taylor*, 400 F.3d

1272, 1275 (11th Cir. 2005).  To survive a Rule 12(b)(6) motion, the plaintiff must plead "more

than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must meet the "plausibility

standard." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard requires that a complaint

contain sufficient factual allegations which "state a claim to relief that is plausible on its face."

*Id.* (quoting *Twombly*, 550 U.S. at 570). The factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint asserting a claim for relief must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2); FRBP 7008. Claims alleging fraud must also meet the "particularity" requirement of Rule 9(b).[5] A plaintiff meets the particularity requirement by "set[ting] forth the basic outline of fraud and . . . indicat[ing] who made the misrepresentations and the time and place the misrepresentations were made." *Rezin v. Barr (In re Barr)*, 188 B.R. 565, 570 (Bank. N.D. Ill. 1995). Conditions of the defendant's mind such as intent or knowledge may be alleged generally; the rule does not require elevated pleading. *Iqbal*, 556 U.S. at 686.

IV.    Plaintiff's Amended Complaint

In accordance with Eleventh Circuit case law, the Court will GRANT the Plaintiff's Motion for Leave for the following reasons.

a.  No Undue Delay or Prejudice

The Court concludes that granting the Motion for Leave does not unduly delay or prejudice the Defendant. The Defendant had the opportunity to hear the Plaintiff's argument at the Hearing. Therefore, the Defendant has had a fair opportunity to address the Amended Complaint. *See Schaumburg Bank & Tr. Co. v. Hartford (In re Hartford)*, 525 B.R. 895, 904 (Bankr. N.D. Ill. 2015) ("Having already heard [the plaintiff's] argument . . . at the hearing for summary judgment and having objected . . . , the [defendant] had fair warning and opportunity to address the issues.").

---

[5] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) is made applicable to adversary proceedings by FRBP 7009.

b.   Amendment was Not Futile

The Court concludes that the Plaintiff's amendment to the Original Complaint was not

futile.  For the reasons set forth in the Court's discussion of the motions for summary judgment,

the Amended Complaint is not immediately subject to summary judgment for the Defendant.

The real issue regarding the futility of the Amended Complaint is whether the counts of the

Amended Complaint pleading fraud survive the Defendant's defense of failure to state a claim.

More specifically, the issue is whether the Amended Complaint meets the particularity standard

for pleading fraud.

i.   Amended Complaint Sufficiently Pleads Fraud

The Plaintiff seeks a denial of the Defendant's discharge based on Five Counts.  Counts

One, Four, and Five contain allegations that a denial of discharge is proper under § 727(a)(4)(A),

(a)(2), and (a)(7), respectively.[6]  These subsections require a showing of fraud, and therefore, the

Amended Complaint must allege fraudulent behavior by the Defendant with particularity.  The

Court finds that at least twenty-five paragraphs in the Amended Complaint contain factual

averments of fraudulent behavior relevant to and incorporated in Counts One, Four, and Five.

The Plaintiff has alleged misrepresentations made by the Defendant in his Statement of Financial

Affairs ("SOFA") No. 1, filed on June 16, 2014, and at the Rule 2004 Examination of the

Defendant on August 12, 2014. (Am. Compl. 1, ¶¶ 8, 28, ECF No. 50).  The Amended

Complaint contains allegations of the Defendant falsifying records for the purpose of concealing

undeclared personal income for the year 2012 to date. (Am. Compl. 1, ¶ 29).  It also contains

allegations of omissions by the Defendant in the original and amended SOFAs.  For example, the

---

[6] Count Five of the Amended Complaint contains the allegation that a denial of a discharge is proper under §
727(a)(7).  One of the underlying objectionable acts that the Plaintiff pleads as a basis for a § 727(a)(7) claim is an
act under § 727(a)(2), which requires a showing of fraud.

Plaintiff specifically alleges that the Defendant failed to disclose the existence of his scrap metal business on SOFA No. 18. (Am. Compl. 2, ¶ 32).  The Plaintiff alleges that in the year prior to the Petition Date the Defendant transferred a recreational vehicle in which he possessed an interest and failed to disclose the transfer in his SOFA. (Am. Compl. 5, ¶¶ 62-64).  This allegation along with the other alleged omissions are allegations of false oaths and attempts to conceal property of the Defendant.  The Plaintiff incorporates these allegations in the counts alleging fraudulent behavior.  Additionally, the Amended Complaint contains an allegation of the Defendant's involvement in transfers to an insider, SES, made within one year of the Defendant's bankruptcy, and in connection with the SES bankruptcy. (Am. Compl. 6-7, ¶¶ 75-76, 82-83).  Because intent may be plead generally, it is not necessary that the Plaintiff plead specifically that the Defendant knowingly and fraudulently made false oaths, possessed the intent to hinder, delay, or defraud creditors with regards to a transfer or disposition of property of the estate, or any fraudulent intent that may be required under § 727(a)(7).

The Court finds that the Plaintiff provided a basic outline of fraud in pleading facts upon which relief may be granted under § 727(a)(2), (a)(4)(A), and (a)(7).  Therefore, the Amended Complaint meets the particularity requirement for pleading fraud, and thus, the amendment is not futile.

V.      Legal Standard for Addressing Parties' Motions

Rule 12(c) allows a party to move for a judgment on the pleadings after the pleadings are closed but timely enough not to delay trial.  Rule 12(d) provides that motions under 12(b)(6) or 12(c) must be treated as a motion for summary judgment if the parties present matters outside the pleadings and the Court does not exclude such matters.

The Defendant moved for summary judgment in the alternative.  The Plaintiff filed a

cross motion for summary judgment.  Both parties presented extraneous matters to the Court by

attaching exhibits to their motions for summary judgments and reply briefs.  Additionally, both

parties referenced these exhibits in their statements of uncontested facts, responses to the other

party's statement of uncontested fact, and at the Hearing.  Because the Court did not exclude

extraneous materials produced by the parties, the Court will consider in its analysis all the

documents in the record.  Therefore, the proper legal standard for addressing the parties' motions

is the standard prescribed in Rule 56.

## Summary Judgment

Pursuant to Rule 56,[7] the Court must "grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  The Court must view the evidence in the record "in the light most favorable to

the non-moving party." *Jordan v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).  Under Rule

56(c), the party seeking summary judgment bears the burden of showing the bankruptcy court

the basis for its motion and "identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact" and warrant a judgment as a matter

of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-moving party must "present

evidence from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 257 (1986).

If the moving party bears the burden of proof at trial, he must show that "no reasonable

trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509

---

[7] Rule 56 is made applicable to adversary proceedings by FRBP 7056.

F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp.*, 477 U.S. at 323).  But if the non-moving

party bears the burden, "the movant can prevail merely by pointing out that there is an absence of

evidence to support the non[-]moving party's case." *Id.*  An entry of summary judgment is proper

"against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp.*, 477 U.S. at 322.

An issue of fact is material if it affects the outcome of the case as identified by

substantive law. *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.

1996); *Anderson*, 477 U.S. at 248.  Therefore, the court will focus its analysis solely on factual

contentions that are relevant and necessary to the outcome of the case. *Id.*  A genuine dispute

exists if a reasonable fact finder could return a verdict for the non-moving party based on the

evidence at hand. *Anderson*, 477 U.S. at 255.  A genuine dispute means that "more than 'some

metaphysical doubt [exists] as to the material facts.'" *Id.* at 260 (citing *Matsuchita Elec. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### Factual Background

The parties have disputed a number of each other's "uncontested" facts, but the following

constitutes the Court's findings of undisputed facts based on all matters of record.  The Plaintiff

is a judgment creditor.  On June 28, 2009, the Superior Court of Newton County entered a

judgment in favor of the Plaintiff and against the Defendant by means of a consent order.  The

judgment obtained against the Defendant was for $1,517,488.27.[8]

The Defendant is a salesman with a ninth grade education whose business over the years

has included selling horses, scrap metal, and supermarket equipment, and consulting companies

---

[8] The Superior Court of Newton County entered the judgment against the Defendant and Supermarket Equipment
Resale, Inc., jointly and severally.

in supermarket equipment sales.  He has bought and sold agricultural products, scrap metal, and used supermarket equipment for approximately thirty-nine years.

Oconee Metal Recovery, Inc. ("OMR") is an entity that purchased scrap metal from the Defendant.  OMR paid the Defendant through checks made payable to the Defendant personally. The Defendant conducted his business of buying and reselling scrap metal under his own name as opposed to a trade name.  In the two years preceding the Petition Date, OMR issued the Defendant 30 checks for a total of $40,176.47. (Pl.'s Mo. Summ. J. Supp. Br. Ex. A; Ex. G; Def. Mo. Summ. J. Ex. D-1, ECF No. 52-2).

TB Auctions, Inc. ("TB Auctions") is a Georgia Corporation.  The Defendant is the officer or director and the 100% shareholder of the corporation.  TB Auctions would buy supermarket equipment and sell it through auctions, but TB Auctions does not have an inventory of supermarket equipment.  (Pl.'s Reply Br. Ex. A., ECF No. 100).  Prior to the Petition Date, TB Auctions had an account at Regions Bank.  This account received funds from electronic transfers made by American Express and wire transfers made by Supermarket Equipment Sales, LLC. (Def.'s Rep. Br. Ex. D, ECF No. 91).  TB Auctions received a wire transfer for $12,000 on September 23, 2013 and another for $1,000 on October 7, 2013 from Supermarket Equipment Sales, LLC. (Def.'s Mo. Summ. J. Ex. D-4, ECF No. 52-6).

Supermarket Equipment Sales, LLC ("SES") was a Georgia limited liability company that filed for Chapter 7 bankruptcy on July 8, 2014.  Kirby Murdoch was the sole owner.  The Defendant served in a managerial capacity at SES, but he did not receive income from SES. (Murdoch Dep. 6:16-7:16; 12:17-25; 31:2-32:12).  The Defendant's wife, Judy Breedlove, received a salary from SES for the years 2010 through 2014. (Def.'s Mo. Summ. J. Ex. D-10). SES maintained its office at the same location as the former Supermarket Equipment Resale, Inc.

("SER"), a company owned by the Defendant.  SES took over SER in 2009 after Prins Bank in

Prinsburg, Minnesota foreclosed on SER. (Murdoch Dep. 15:9-16:17).

In February 2014, the Defendant sold a recreational vehicle that the Defendant originally

purchased for SES.  The recreational vehicle sold for $45,000.  The Defendant kept at least

$20,000 of the proceeds as commission for the sale.  The title to the recreational vehicle was in

SES's name, but the Defendant stored the recreational vehicle on his property. (Murdoch Dep.

107:2-109:24).

The Defendant collects $1,663.45 a month for social security. (Am. Sched. I, Case No.

14-30634, ECF No. 36).  The Defendant's Original SOFA, filed on the Petition Date, shows

gross income from sales of $35,468 for the year 2012; $8,438 for the year 2013; and $12,000 for

the year 2014 up until the Petition Date. (SOFA, Case No. 14-30634, ECF No. 1).  The

Defendant amended his SOFA on February 19, 2015 to reflect the amount of gross income that

he received from sales of scrap metal, horses, equipment, and other personalty.  The Defendant

received $120,515 for the year 2012; $61,523 for the year 2013; and $18,655 for the year 2014

up until the Petition Date. (Am. SOFA, Case No. 14-30634, ECF No. 36).  On April 6, 2015, the

Defendant filed another amended SOFA to reflect the commission earned by the Defendant for

selling the recreational vehicle.  Up until the Petition Date, the Defendant earned a gross income

of $38,655 for the year 2014. (Am. SOFA, Case No. 14-30634, ECF No. 42).

The only financial record kept by the Defendant is a check register. (Pl.'s Mo. Summ. J.

Supp. Br. Ex. A, ECF No. 60-1).  The check register lists checks drawn on the Defendant's

personal account but does not record deposits. (Pl.'s Mo. Summ. J. Supp. Br. Ex. E, ECF No. 60-

3; Ex. H, ECF 60-6).  His only records of his personal financial condition are his check register

and his personal bank statements from United Community Bank ("UCB") in Conyers, Georgia.

(Pl.'s Mo. Summ. J. Supp. Br. Ex. A; Ex. H; Ex. I, ECF No. 71–77).  The Defendant does not

maintain any other record of checks received as part of his income.  Additionally, the Defendant

does not maintain any other record of cash withheld from deposits.

     To calculate his personal income, the Defendant relied on his bank statements. (Pl.'s Mo.

Summ. J. Supp. Br. Ex. A).  The Defendant's CPA and the CPA's father have prepared the

Defendant's personal and business tax returns for 30 years.  The CPA calculated the Defendant's

income for tax purposes by using the Defendant's bank statements and relying on the

Defendant's oral representations regarding his income.  The Defendant's representations to his

CPA of his income from scrap metal and horse sales were not always concrete figures.  To

determine the amount of income derived from scrap metal sales, the CPA would subtract farm

income, a figure the Defendant orally represented to the CPA, from the deposit amounts

appearing in the Defendant's bank statements.   The CPA would disclose the resulting figure in

Schedule F of the Defendant's tax return.  The CPA was unaware of the total amount of income

the Defendant earned from scrap metal sales to OMR.  She did not receive anything from OMR

regarding checks made payable to the Defendant.  The CPA did not include OMR checks not

deposited in calculating the Defendant's income. (Pl.'s Mo. Summ. J. Supp. Br. Ex. J. ECF No.

79).  The Defendant did not deposit two checks from OMR: a check for $1,241.10 dated

December 7, 2012 and a check for $2,556.65 dated February 5, 2014. (Def.'s Rep. Br. Ex. A,

ECF No. 91).  Additionally, the CPA did not include cash that the Defendant withheld from

deposits in calculating his income. (Pl.'s Mo. Summ. J. Supp. Br. Ex. J).

### Discussion and Conclusions of Law

     At the Hearing, the Court asked the parties to address in their closing arguments the

possibility of the Court granting the Plaintiff's Motion for Leave and allowing the Amended

Complaint previously filed by the Plaintiff.  The Court, thereby, provided an opportunity for the parties to be heard on their motions for summary judgment in light of the Amended Complaint. Because the Court provided such an opportunity and will grant the Motion for Leave, the Court will analyze the Defendant's Motion for Summary Judgment in light of the Amended Complaint. The Plaintiff requests in five counts that the Defendant be denied a discharge based on § 727 (a)(2), (a)(3), (a)(4)(A), (a)(5), and (a)(7).

The Court will DENY the Defendant's Motion for Summary Judgment on all counts. The Court will GRANT partial summary judgment for the Plaintiff on Count Two and DENY the Defendant a discharge on the basis of § 727(a)(3).

I.      Count One: § 727(a)(4)(A)

The burden is on the plaintiff to prove by a preponderance of the evidence that a denial of a discharge is proper under § 727(a). *DePaola v. Hollingsworth (In re Transp. Mgmt. Inc.)*, 278 B.R. 226, 236 (Bankr. M.D. Ala. 2002).  Under § 727(a)(4)(A), the plaintiff must prove that "the [defendant] knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."  The court should deny a discharge "where the omission from the Schedules or Statement of Financial Affairs is both fraudulent and material." *Chambers v. Coon (In re Coon)*, 396 B.R. 772, 779 (Bankr. M.D. Fla. 2008) (citing *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 2008)).  The substance of a false oath made by the defendant is material if it "bears a relationship to the [defendant's] business transactions or [bankruptcy] estate or concerns the discovery of assets, business dealings or the existence and disposition of his property." *Bozeman v. Sullivan (In re Sullivan)*, 492 B.R. 348, 353 (Bankr. M.D. Ga. 2013) (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)).

16

To establish fraudulent intent, the plaintiff must show that the debtor "deliberately

omitted information from her bankruptcy schedules" and statement of financial affairs. *Id.*  The

plaintiff must prove actual fraudulent intent. *Petland, Inc. v. Unger (In re Unger)*, 333 B.R. 461,

465 (Bankr. M.D. Fla. 2005).  Amendments to Schedules or Statements of Financial Affairs

made by the defendant do not expunge any fraud in the falsity of oaths; they may only cure false

oaths made through honest mistakes. *Wachovia Bank, N.A. v. Spitko (In re Spitko)*, 357 B.R. 272,

313 (Bankr. E.D. Pa. 2006).  However, "courts are reluctant to grant summary judgment on a

cause of action under § 727(a)(4)" because the determination of fraudulent intent "involves

questions of fact involving the debtor's state of mind." *Adv. Leasing Corp. v. Moss (In re Moss)*,

2006 WL 6589913, at *4 (Bankr. N.D. Ga. Mar. 31, 2006).

     a.   Defendant's Motion for Summary Judgment on Count One

        i.   False Oaths in Statement of Financial Affairs and Amendments

The Defendant contends that the Plaintiff cannot meet his burden under § 727(a)(4)(A)

because all of the OMR income was included in the 2012 and 2013 tax returns and the

amendments to SOFA cured the mistakes made by the Defendant in the original filings.

However, the record shows that not all of the OMR income was included in the tax returns.  Two

checks from OMR dated within two years prior to the bankruptcy for a total of $3,797.75 were

not deposited in the Defendant's UCB Account.  One check for $1,241.10 was dated December

7, 2012.  Based on the CPA's method for filing tax returns, this amount of income was not

included in the Defendant's 2012 tax return.  The other check for $2,556.65 was dated February

5, 2014.  The evidence suggests the Defendant failed to include $3,797.75 in the Original SOFA

or any amendment.  Additionally, the record shows that the Defendant failed to disclose that he

earned a commission for the sale of the recreational vehicle in his Original SOFA and the first

amendment.  The Defendant argues that these omissions in the SOFAs were not material.  The

Court disagrees.  The failure to disclose $3,797.75 of pre-petition income from scrap metal sales

and a $20,000 commission in his SOFA "bears a relationship to the [defendant's] business

transactions or [bankruptcy] estate or concerns the discovery of assets, business dealings or the

existence and disposition of his property." *In re Sullivan*, 492 B.R. at 353 (quoting *In re Chalik*,

748 F.2d at 618).  Therefore, the Defendant has not shown an absence of an essential element of

a claim under § 727(a)(4)(A).

ii.  Fraudulent Intent

The Defendant argues that any false oaths made on the SOFA and amendments were the

product of honest mistake and that every mistake was eventually cured through amendments.

Whether the Defendant made honest mistakes in his SOFAs is an issue of intent.  The Court

agrees with its sister court that the issue of actual fraudulent intent is not appropriate on summary

judgment.  Because the record indicates the Defendant made false oaths in his SOFAs and his

amendments, the Court concludes that summary judgment is not proper for the Defendant on

Count One.

b.  Plaintiff's Cross Motion for Summary Judgment on Count One

The Plaintiff needs only prove that a denial of discharge is proper under one subsection

of § 727(a).  Because the Court finds that summary judgment is proper for the Plaintiff on Count

Two, it is unnecessary for the Court to make a determination on the Plaintiff's Cross Motion for

Summary Judgment on Count One.

II.     Count Two: § 727(a)(3)

A denial of a discharge is proper under § 727(a)(3) if the plaintiff can prove that "the

debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded

information, including books, documents, records, and papers, from which the debtor's financial

condition or business transactions might be ascertained." An objectionable act under this

subsection may be excused if the defendant shows that "such act or failure was justified under all

of the circumstances of the case." 11 U.S.C. § 727(a)(3). This subsection "make[s] the privilege

of a discharge dependent on a true representation of the debtor's financial affairs." *Colonial*

*Bank v. Wynn (In re Wynn)*, 261 B.R. 286, 299 (Bankr. M.D. Ala. 2001). It ensures that creditors

and trustees receive sufficient and accurate information to determine the debtor's financial

history, financial condition, and the details of financial transactions. *Id.* The debtor shoulders the

affirmative duty to maintain and retain comprehensible records. *Sackett v. Shahid (In re Shahid)*,

334 B.R. 698, 706 (Bankr. N.D. Fla. 2005). Courts and creditors should not be burdened with

reconstructing and speculating as to the financial history or condition of a debtor. *Turner v. Tran*

*(In re Tran)*, 297 B.R. 817, 835 (Bankr. N.D. Fla. 2003).

      The court has "wide discretion in determining the sufficiency of records." *James v. Tipler*

*(In re Tipler)*, 360 B.R. 333, 347 (Bankr. N.D. Fla. 2005). The court may consider the following

factors when determining the adequacy of records: (1) the debtor's education; (2) the debtor's

sophistication; (3) the debtor's business experience; and (4) the sophistication of the debtor's

business. *Union Bank of the Middle E., Ltd. v. Farouki (In re Farouki)*, 133 B.R. 769, 781

(Bankr. E.D. Va. 1991). This list of factors is not exhaustive, and therefore, the court may

consider any factor relevant to determining the adequacy of the debtor's records. *See Ng v. Adler*

*(In re Adler)*, 494 B.R. 43, 67 (Bankr. E.D. N.Y. 2013) (considering factors such as whether a

failure to preserve record was Debtor's fault, customary business practices for record keeping,

and degree of accuracy of existing records). Justification for maintaining inadequate records

"depends . . . on what a normal, reasonable person would do under similar circumstances" based

on the education, experience, and sophistication of the debtor, and other relevant factors

regarding the debtor's business. *In re Tipler*, 360 B.R. at 349 (quoting *Milam v. Wilson (In re*

*Wilson)*, 33 B.R. 689, 692 (Bankr. M.D. Ga. 1983)).

## Types of Financial Records

In *Schechter v. Hansen (In re Hansen)*, the United States Bankruptcy Court for the

Northern District of Illinois opined on the types of records an average adult is expected to keep

and preserve. 325 B.R. 746, 763 (Bankr. N.D. Ill. 2005).  The debtor in that Chapter 7 case was a

lawyer and a corporate officer.  The court found that the plaintiff met his burden of proving the

debtor-defendant's records were inadequate because the defendant's tax returns were incomplete:

one tax return lacked a W-2 attachment and another lacked a Schedule B.  He also had no copies

of a certificate of deposit and a promissory note.  Additionally, the defendant did not produce

monthly statements from his brokerage account, records of checks drawn on the account, and

check and bank statements from another bank account.  In denying the defendant a discharge, the

court emphasized that the records lacked by the defendant were "the kind every adult is expected

to keep and preserve: tax returns, promissory notes, checks, check ledgers, bank statements, and

statements from investment accounts." *Id.*

## Applying Relevant Factors

In *Moreo v. Rossi (In re Moreo)*, the United States District Court for the Eastern District

of New York affirmed the bankruptcy court's denial of the Chapter 7 debtors' discharge under §

727(a)(3). 437 B.R. 40, 58 (E.D. N.Y. 2010).  The debtors in that case were a husband and wife

who owned an incorporated bagel shop.  The wife was the main operator of the store. *Id.* at 47.

The district court considered the complexity of the debtors' business, the sophistication of the

debtors, the custom record keeping practices for the type of business ran by the debtors, and the

20

accuracy of existing books and records. *Id.* at 51-58.  The court determined that the complexity

of the business had no effect on a denial of a discharge. *Id.* at 52.  The business was small and

not complex.  It did not engage in large volumes of sales while it was in operation. *Id.* at 51-52.

The court noted that the small nature of a business does not justify a failure to keep records. *Id.*

at 52.

Despite achieving only a high school education, the court determined that the wife-

debtor's lack of sophisticated did not justify her failure to keep accurate records. *Id.* at 52.  The

court focused its analysis on the wife because she was the primary operator of the business.  She

had no business or accounting experience prior to running the bagel store.  The wife hired an

accountant to help with the business's finances.  The accountant would come by the shop every

month or so to collect financial information and records from the wife.  The court noted that the

use of an accountant should have indicated to the wife that she needed to keep records of sales,

expenses, and outgoing payments. *Id.*  Furthermore, the court emphasized that it was the debtor's

responsibility to maintain accurate records and not the accountant's. *Id.*

The district court determined that the "widespread use of 'informal bookkeeping

practices' . . . does not obviate [the debtor's] duty to record and keep financial and business

records." *Id.* at 53.  The debtors' argument for their lack of financial and business records was

"that the retail bagel business is a cash business with informal bookkeeping practices;" however,

the debtors did not present evidence of what the customary bookkeeping practice was for a bagel

store. *Id.*

The bankruptcy court found that the records and documents provided to the accountant

by the wife for filing tax returns were inaccurate and incomplete. *Id.* at 55.  The wife failed to

"keep any ledger or formal records of her receipts, expenses, or payments." *Id.* at 55-56.  The

district court agreed with the bankruptcy court and emphasized the importance of accurate and

complete record keeping in a cash-based business "for creditors to determine the financial

condition and business transactions of the business and to determine the sales and withholding

taxes that are due to the taxing authorities." *Id.* at 56.

    a.  Defendant's Motion for Summary Judgment on Count Two

First, the Court notes that Count Two of the Original Complaint meets the plausibility

pleading standard.  Paragraphs 21, 23, 24, 33, and 34 of the Original Complaint sufficiently state

a claim for a denial of discharge under § 727(a)(3).  Paragraph 21 states, "At the [Rule 2004]

Examination, Defendant testified that the record of deposits on the checkbook register for his

personal checking account is the sole record of the personal income he has received through his

business operations."  Paragraph 23 states, "At the Examination, Defendant testified that he

furnished his accountant with all personal checkbook registers, bank statements, and bank

deposit slips. These documents were utilized by his accountant as the sole source of information

to calculate his personal income, and to prepare his personal tax returns."  Paragraph 24 states,

"At the Examination, Defendant testified that all of his personal income he received through his

business operations is included in his personal income tax returns."  The Plaintiff incorporates

these factual allegations into Count Two through Paragraph 33, and the Plaintiff states the

grounds for relief in Paragraph 34.  Count Two of the Original Complaint would survive a

12(b)(6) motion to dismiss if the Court had denied the Plaintiff's Motion for Leave.

    i.  Defendant's Financial Records

For the reasons stated below, the Court finds that summary judgment is not proper for the

Defendant on Count Two.  The Defendant contends that the Plaintiff is unable to show that the

Defendant "failed to keep financial records from which his financial conditions or business

transactions may be ascertained." (Def.'s Mo. Summ. J., at 17).  He states that the Plaintiff

cannot identify financial records that meet the criteria of § 727(a)(3) and cannot name a missing

record.  Furthermore, the Defendant supports his position by stating the Plaintiff has all of the

records pertaining to his two bank accounts – his personal UCB Account and the TB Auctions

Regions Account – because the Plaintiff has the Defendant's check register and bank statements

for both accounts.  According to the Defendant, these records satisfy the requirements for

receiving a discharge under § 727.

The evidence shows there is no record for at least $3,797.75 of OMR income because

two checks from OMR were not deposited into the Defendant's UCB Account.  Additionally, the

evidence shows that the Defendant may not have deposited another $1,639.80 worth of OMR

checks.[9]  The bank statements the Defendant references as being records of income are only such

if the Defendant deposited checks representing income into his UCB Account.  OMR produced

the only record of the Defendant's OMR income.  Because the Defendant has no independent

record of OMR income other than his bank statements, the only record of OMR income kept or

preserved by the Defendant is incomplete.  Additionally, any check representing income that was

not deposited would not have been included in the Defendant's 2012 and 2013 tax returns based

on the method used by the Defendant's CPA to file his tax returns.[10]  The same is true for cash

transactions.  As admitted by the Defendant, "Check and cash deposited into Defendant's UCB

Account, *less any cash received by Defendant*, even if it was not actually income, was recorded

as income by his CPA on Schedule F of his federal tax returns and on his SOFA ¶ 1 for 2012 and

2013." (Def.'s Statement of Material Facts ¶ 10, ECF No. 92) (emphasis added).  The amounts of

---

[9] This amount represents two OMR checks: one for $695.50 dated October 11, 2013 and another for $944.30 dated
March 20, 2014.  The Defendant believes they were included in deposits, but he cannot be certain. (Def.'s Reply Br.
Ex. A).
[10] The Court notes that the Defendant has not filed his 2014 tax return.

cash withheld from deposits and whether that cash was income are in dispute.[11]  However, the

disputed amounts in the record and exhibits reconstructing deposits made by the Defendant show

the impossibility in attempting to derive the Defendant's financial situation.  This impossibility is

due to the lack of financial records pertaining to the Defendant's income.  The Defendant has

failed to show an absence of material facts necessary for the Plaintiff to prove a claim under §

727(a)(3).

 The Defendant contends that even if cash withheld was not included in his gross income,

the record shows that the Defendant "reported as gross income on his tax returns and in his

SOFA ¶ 1 a significant amount of deposits which was not earned as income." (Def.'s Mo.

Summ. J., at 9).  There lies the inherent problem with the Defendant's financial records.

Whether or not deposits not earned as income were included in the calculation of the

Defendant's gross income does not change the fact that the Defendant's financial records

regarding his income are inaccurate.

ii.   Defendant's Justification for Financial Records

 In support of his argument that his financial records are reasonable under the

circumstances, the Defendant states that the Defendant is "not a lawyer, accountant, business

owner, or the operator of a sophisticated business." (Def.'s Mo. Summ. J., at 17).  Furthermore,

the Defendant argues that he has only achieved a ninth grade education and worked as a

salesman all his life.  However, the record shows that the Defendant is a former 100%

shareholder and corporate officer of a Georgia corporation.  He is the current 100% shareholder

and corporate officer of a Georgia corporation.  He is a businessman with thirty-nine years of

---

[11] The Plaintiff contends that $26,262 has been withheld by the Defendant from deposits, as shown by the Defendant's UCB Bank Statements. (Pl.'s Mo. Summ. J. Supp. Br. Ex. I).  In his Response to Allegation that Cash Retained from Deposits was Unreported Income, the Defendant argues that only $400 of the $26,262 withheld from deposits represents income. (Def.'s Reply Br. Ex. C, ECF No. 91).

business experience, engaging in sales in multiple trades.  Despite the Defendant's claim of
unsophistication, a reasonable fact finder could determine that the Defendant is a sophisticated
businessman.

The Defendant has offered no evidence of the recordkeeping standard for a businessman
involved in sales across multiple trades.  The record shows only evidence that the Defendant's
recordkeeping was similar to that of individuals engaged in small business.  Additionally, the
Defendant's use of an accountant for both his personal and business finances should have
indicated to him the need to keep records from which his CPA could file accurate and complete
tax returns.  The Defendant has failed to show a justification for his financial records.  Therefore,
summary judgment is not proper for the Defendant on Count Two.

b.  Plaintiff's Cross Motion for Summary Judgment on Count Two

i.  Defendant's Financial Records

The Court finds that the Plaintiff met his burden in showing that no genuine issue of
material fact exists as to whether the Defendant failed to keep or maintain financial records from
which the Defendant's financial condition could be derived.  First, it is undisputed that the sole
financial record kept by the Defendant is his check register, and it only shows checks drawn on
the Defendant's personal UCB Account.  The issue with the Defendant's records is not the
outgoing transactions from the UCB Account; it is the Defendant's income deposited into his
UCB Account, specifically income from OMR.  The Defendant's UCB bank statements are the
sole records of the Defendant's income.  The bank statements contain images of deposit slips and
checks drawn on the UCB Account, but there are no such images of deposited checks.  If the
Defendant did not deposit the check, the income was omitted from the bank statement.  The
Defendant failed to maintain any record of income received from OMR.  As stated above, the

25

lack of records has left the parties to reconstruct individual deposits based on the amounts

written on deposit slips.  The Defendant admits $3,797.75 of the OMR checks were not

deposited into his UCB Account.  Viewing the evidence in the light most favorable to the

Defendant, $400 of $26,626 of cash withheld from deposits actually represents income.  The

Defendant's CPA used the bank statements and the Defendant's oral representations to calculate

income to file his tax returns.  The CPA would corroborate the Defendant's oral representations

using the information provided in the bank statements.  However, the bank statements were not

complete records of the Defendant's income.  Additionally, the CPA did not include cash

withheld in her calculation of the Defendant's income.  Therefore, the Defendant's CPA did not

include the income from checks that were not deposited or cash withheld in the Defendant's tax

returns.  Thus, the tax returns and bank statements as records of the Defendant's income are

inaccurate and incomplete.

The Defendant presented evidence of his financial records and an affidavit from his CPA

explaining the Defendant's recordkeeping practices.  Based on the evidence in the record, the

Court is persuaded that no reasonable fact finder could determine that the Defendant kept

adequate records to warrant his receipt of a discharge.

The Court notes that the Defendant's financial records are not abysmal like the

defendant's financial records in *In re Hansen*.  However, given the Defendant's business

transactions were across several trades, the inaccuracy and incompleteness of the few financial

records available, such as tax returns and bank statements, have a large bearing on the Court's

ability to derive the Defendant's financial condition.

ii. Defendant's Education and Sophistication

The Court finds that no genuine issue exists as to the Defendant's financial

sophistication.  Despite achieving only a ninth grade education, the Defendant has achieved a

certain level of financial sophistication as a businessman.  The Defendant claims that his

business records of a check register and bank statements are adequate financial records under the

circumstances because he is not a sophisticated businessman.  However, the record shows that

the Defendant is an experienced businessman who earned income from multiple business

ventures, which included the sale of horses, scrap metal, and supermarket equipment. *See In re*

*Herzog*, 121 F.2d 581, 582 (2d Cir. 1941) ("Men who do business in two capacities should know

they must keep a record which will show in which capacity they were acting in a given

transaction.").  The record indicates that the Defendant was a successful businessman in years

prior to filing for bankruptcy.  The fact that the Defendant only has a high school level education

is not per se justification for the failure to keep or preserve adequate financial records. *See*

*Trustee v. Sieber (In re Sieber)*, 489 B.R. 531, 553 (Bankr. D. Md. 2013) (holding that debtor

who only had a high school education but ran a profitable contracting business should be denied

a discharge for failure to keep or preserve sufficient financial records); *Novak v. Blonder (In re*

*Blonder)*, 258 B.R. 534, 538, 540 (Bankr. D. Conn. 2001) (determining that debtor failed to rebut

plaintiff's § 727(a)(3) claim or justify inadequacy of financial records despite debtor arguing that

he was unsophisticated and had no formal education past high school). *See also Crocker v. Stiff*

*(In re Stiff)*, 512 B.R. 893, 899 n.3 (Bankr. E.D. 2014) (noting that a debtor's financial

sophistication, "whether acquired by higher education or by other means," is more important

than educational attainment in determining the reasonableness of record keeping).  The

circumstances show that the Defendant is not unsophisticated; he is a businessman and a

business owner with thirty-nine years of experience. Therefore, no reasonable fact finder could determine that his failure to maintain financial records of his income was justified.

The Defendant cites this Court as authority for why the debtor's discharge should not be denied under § 727(a)(3). In *Bozeman v. Sullivan (In re Sullivan)*, the United States Bankruptcy Court for the Middle District of Georgia held that a debtor with a high school education and *no business experience* should not be denied a discharge pursuant to § 727(a)(3). 492 B.R. at 350. This Court noted that the debtor failed to keep inventory records for her business; however, such a failure did not make it impossible for creditors to determine the debtor's financial condition. The plaintiff was unable to show how the failure to provide records of inventory made it impossible to derive the debtor's financial situation. Additionally, the debtor provided creditors with statements of revenue and expenses as prepared by her accountant.

The Court distinguishes the case at hand from *In re Sullivan* for two reasons: (1) the Defendant *is a businessman*; and (2) the Plaintiff has shown the inability to determine the Defendant's financial condition because of the inaccuracies surrounding the Defendant's tax returns and bank statements as records of income. First, the Court reemphasizes that the Defendant has thirty-nine years of business experience, which distinguishes him from defendants with only a high school level education and no business experience. Therefore, *In re Sullivan* is not analogous in regard to debtor sophistication. Secondly, the Plaintiff has shown the inability to determine the Defendant's income because of a lack of financial records regarding income. The Plaintiff cannot rely on the Defendant's tax returns or bank statements to determine the Defendant's financial condition, and as stated above, he has shown evidence to that effect.

III.     Count Three: § 727(a)(5)

For the court to deny a discharge under § 727(a)(5), the plaintiff must prove that "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities."  Courts have interpreted § 727(a)(5) to require that the asset be a "substantial identifiable asset" that was owned "not too remote in time" to the petition date. *Libertore v. Walden (In re Walden)*, 380 B.R. 883, 894 (Bankr. M.D. Fla. 2008); *Nuvell Credit Corp. v. Ross (In re Ross)*, 359 B.R. 690, 700 (Bankr. N.D. Ill. 2007); *Buckeye Ret. Properties of Ind., LLC v. Tauber (In re Tauber)*, 349 B.R. 540, 565 (Bankr. N.D. Ind. 2006).

a.    Defendant's Motion for Summary Judgment on Count Three

Defendant states in his Motion for Summary Judgment and reemphasized at the Hearing that the Plaintiff must "identify an asset that the Defendant possessed prior to filing for bankruptcy" but no longer possesses, without explanation for its disposition. (Def.'s Mo. Summ. J., at 15).  Furthermore, the Defendant asserts that the Plaintiff has failed to meet his burden under § 727(a)(5) because he failed to identify such an asset.

A genuine dispute exists as to whether the Defendant engaged Murdoch to divert to Judy Breedlove any potential salary that the Defendant may have earned for his work at SES. However, the record does not show salary possessed by the Defendant.

The record does show the loss of two checks issued by OMR within two years prior to the Petition Date.  The Defendant admits he has no explanation for their disposition.  The total of these checks is $3,797.75.  A genuine dispute exits as to whether this amount of would-be cash or checking account assets is substantial given the $336,501.61 in assets and $2,959,911.41 in liabilities listed in the Defendant's Amended Summary of Schedules.  Because the Defendant

29

failed to show that no genuine issue of material fact exists as to the Plaintiff's claim under §
727(a)(5), the Court will deny the Defendant's Motion for Summary Judgment on Count Three.

IV.     Count Four: § 727 (a)(2)

A denial of a discharge is proper under § 727(a)(2)(A) if the plaintiff shows that the
debtor transferred, removed, destroyed, mutilated, or concealed the debtor's property within one
year before the date of filing the petition with the intent to hinder, delay, or defraud creditors.  A
plaintiff "alleging intent to defraud under § 727(a)(2)(A) bears the considerable burden of
demonstrating *actual fraudulent intent;* constructive fraud is insufficient." *AB&T Nat'l Bank v.
Goodwin (In re Goodwin)*, 488 B.R. 799, 806 (Bankr. M.D. Ga. 2013) (quoting *Equitable Bank
v. Miller (In re Miller)*, 39 F.3d 301, 306 (11th Cir. 1994)). *See also In re Moss*, 2006 WL
6589913, at *3 (citing *Hunderwadel v. Dulock (In re Dulock)*, 250 B.R. 147, 152 (Bankr. N.D.
Ga. 2000)) (stating moving party "must establish that the debtor possessed an actual intent to
defraud at the time of the transfer or concealment"); *In re Tipler*, 360 B.R. at 340 (Bankr. N.D.
Fla. 2005) (noting that plaintiffs bear the burden of demonstrating actual fraud).

Despite the requirement of proving actual fraud, the Court may potentially deduce the
intent to defraud from the totality of the circumstances. *In re Moss*, 2006 WL 6589913, at *3.
However, issues of actual intent are not appropriate for summary judgment. *In re Hartford*, 525
B.R. at 903; *In re Moss*, 2006 WL 6589913, at *3 (citing *Fogal Legwear of Switz, Inc. v. Wills
(In re Wills)*, 243 B.R. 58, 65 (B.A.P. 9th Cir. 1999); *Bell v. Stuerke (In re Stuerke)*, 61 B.R. 623,
626 (B.A.P. 9th Cir. 1986)).

a.   Defendant's Motion for Summary Judgment on Count Four

i.   Defendant Concealing Income

A genuine dispute exists as to whether the Defendant concealed his property or property of the estate within one year prior to the Petition Date by failing to disclose pre-petition income in his Schedules and SOFA.  The Defendant maintains that his "CPA totaled all of the deposits made by the Defendant and treated all of those deposits as income." (Def. Mo. Summ. J. 5, ECF No. 91).  The Defendant admits, however, that at least $2,556.65 of his income from an OMR check dated February 5, 2014 was not deposited in the Defendant's UCB Account.  Because the records shows that the Defendant's financial records would not include this check, a reasonable fact finder could determine that this amount of income and potential checking account asset was not disclosed in the Defendant's SOFA or Schedule B.

Additionally, cash withheld from deposits were not included in the Defendant's 2012 and 2013 tax returns; therefore, the Defendant did not disclose the cash in his SOFA.  The Defendant withheld cash from a number of deposits in the year prior to filing for bankruptcy, the total dollar amount of which is in dispute.  Regardless of the amount, the record indicates that the amount of cash withheld from deposits was not disclosed in Defendant's tax returns or SOFA.  Therefore, a genuine dispute exists as to whether the Defendant concealed income and cash and checking account assets.

Lastly, the portion of the proceeds from the recreation vehicle sale that the Defendant took as a commission for facilitating the sale was not disclosed in the SOFA.  The recreational vehicle was sold in February 2014.  Neither the transaction nor the commission was disclosed.

ii.   Defendant's Intent to Defraud Creditors

Issues of actual intent are not appropriate for summary judgment, and the Court declines

to reach a determination of intent on Count Four.  For the reasons stated above, the Court will

deny the Defendant's Motion for Summary Judgment on Count Four.

V.      Count Five: § 727(a)(7)

A denial of discharge under § 727(a)(7) is proper if the plaintiff can prove the following

three elements: (1) the debtor committed an objectionable act under § 727(a)(2) through (6); (2)

the objectionable act occurred on or within one year before the Petition Date or during the

debtor's bankruptcy case; and (3) the act was committed in connection with another bankruptcy

case concerning an insider.  An insider includes a corporation of which the debtor is a director,

officer, or person in control. 11 U.S.C. § 101(31)(A).  To prove a denial of a discharge is proper

under § 727(a)(7) based on an objectionable act under § 727(a)(2), the plaintiff must show the

following:

> (1) an insider relationship exists, and that (2) within one year of the filing of the debtor's
>
> personal bankruptcy case, (3) there was a transfer, removal, destruction, mutilation, or
>
> concealment, (4) of the property of the insider or of the estate of the insider, (5) by the
>
> debtor, (6) with the intent to hinder, delay, or defraud the insider's creditors.

*Kane v. Stewart Tilghman Fox & Bianchi Pa (In re Kane)*, 755 F.3d 1285, 1297 (11th Cir. 2014).

a.   Defendant's Motion for Summary Judgment on Count Five

The Plaintiff alleges that the Defendant committed an act under subsections (a)(2), (a)(3),

and (a)(5) in connection with the SES bankruptcy.  The Court will first dispose of the issues of

whether a genuine dispute exists as to the material facts of a § 727(a)(7) claim premised on

objectionable acts under (a)(3) and (a)(5).  The evidence in the record shows no genuine dispute

exists as to whether the Defendant failed to keep or preserve adequate records from which *SES's financial condition or business transactions* might be ascertained.  The Defendant did not address in his Motion for Summary Judgment whether or not there is an absence of a genuine dispute as to the material facts of a § 727(a)(7) claim premised on an act under (a)(5). Additionally, the Plaintiff did not address an (a)(7) claim premised on an (a)(5) objectionable act. Therefore, the Court will not analyze whether a genuine dispute exists as to any material facts of such a claim.[12]

The issue of whether summary judgment is proper for the Defendant as to a § 727(a)(7) claim premised on objectionable acts under (a)(2) requires more analysis. The Plaintiff alleges in the Amended Complaint that the Defendant, through TB Auctions, made a wire transfer to SES within one year of the Defendant filing for bankruptcy, and this transfer was made in connection with another bankruptcy.  The Defendant stated in his Motion for Summary Judgment that the Plaintiff's allegation was incorrect; the wire transfer was from SES to TB Auctions.  The Defendant admits in his Statement of Material Facts that SES made "a couple of wire transfers" to TB Auctions. (Def.'s Statement of Material Facts ¶ 14, ECF No. 92).   Furthermore, the Defendant attached a bank statement from the TB Auctions Regions Bank Account showing the receipt of the two wire transfers from SES.  The Defendant also stated that any such transaction alleged by the Plaintiff was not in connection with the SES bankruptcy.

---

[12] Rules of law assigning burdens, such as Rule 56, "would mean nothing if [trial] courts were required to mine the record, prospecting for facts that the . . . petitioner overlooked and could have, but did not, bring to the surface in his petition." *Chavez v. Secretary Fla. Dept. of Corrections*, 647 F.3d 1057, 1061 (11th Cir. 2011).  If trial courts were forced to dig through the record without direction from the movant, the burden of "sifting" through the record would shift from the movant to the courts. *Id.*

i.  SES's Status as an Insider

The Court must determine whether a reasonable fact finder could determine that an insider relationship exists between SES and the Defendant.  In the Plaintiff's First Request for Admissions ("RFA 1"), he sought to have the Defendant admit that he was in control of SES and that SES was essentially a restructured SER.  In the Defendant's Response to RFA 1, he admitted that he "managed and had supervisory control over some aspects of the business operations of [SES] but denie[d] that he was in control of SES." (Def.'s Mot. Summ. J. Ex. D-5, at 9, ECF No. 52-7).  The Defendant also denied that the Defendant was the "de facto manager of SES." *Id.* (emphasis omitted).  On April 16, 2015, Murdoch stated in his deposition, "If there was a manager, Tommy would have been the manager." (Murdoch Dep. 13:5-6, ECF No. 96).  Murdoch clarified his statements in that deposition through an errata sheet, stating, "There [were] several managers at SES: . . . Tommy to [sic] was a manager." (Murdoch Dep. 172:23-25, ECF No. 52-15).[13]  Additionally, Murdoch stated that "if there was a CEO or manager, I would think Tommy would be closer to that than I would." (Murdoch Dep. 13:18-20).  Murdoch clarified this statement through an errata sheet by stating, "SES had no CEO as such. I assumed a similar roll [sic] as the owner. SES has several managers, one of which was [the Defendant]." (Murdoch Dep. 173:3).

The relationship between SER and SES appears to be that of a failed company and its immediate successor.  According to the Murdoch Deposition, the Defendant was the "boss" of SER. (Murdoch Dep. 18:6-7).  After SER ceased to exist, SES took over all of SER's assets and continued the exact same business in the exact same location.  Once SES operations began, the Defendant occupied the same office as he did in his role at SER.

---

[13] The Murdoch Deposition at ECF No. 52-13 through 52-17 is the same deposition at ECF No. 96.  ECF 52-15 through 52-17 are errata sheets.

In viewing the evidence in the light most favorable to the Plaintiff, the Court determines a genuine dispute exists as to whether SES is an insider to the Defendant.  The Murdoch Deposition and accompanying errata sheets suggest that the Defendant was a person in control of SES, regardless of the absence of a corporate title.  Therefore, a reasonable fact finder could determine that SES is an insider to the Defendant.

ii.   Timing of Transfers

The evidence shows that the Plaintiff satisfies this element of § 727 (a)(7).  As stated in the Amended Complaint and supported by the record, two transfers of SES property took place within one year of the Defendant filing for bankruptcy: one on September 23 and another on October 7, 2013.

iii.   Defendant's Involvement in Transfers of SES Property

The Regions bank statement shows the Defendant's involvement in at least two transfers of SES property, and both the Plaintiff and the Defendant acknowledge that SES may have made other wire transfers to TB Auctions.  Whether the Defendant actually made or permitted the transfers between SES and TB Auctions is a factual question that remains to be resolved.  The answer to this question depends on the reasonable fact finder's determination of the Defendant's status as an insider and the extent of the Defendant's role and authority as an alleged manager of SES.  Because evidence suggests the Defendant had a managerial role at SES, a genuine dispute exists as to whether the Defendant made or permitted the transfer of SES property to TB Auctions.

iv.   Defendant's Intent to Hinder, Delay, or Defraud SES Creditors

As stated above, the issue of intent under § 727(a)(2) is not an appropriate determination on summary judgment.  Accordingly, the Court will not make such a determination here.

35

v.  Transfers in Connection with SES Bankruptcy

The Defendant contends in his Motion for Summary Judgment that any transfer made between SES and the Defendant was not in connection with the SES bankruptcy.  However, the connection with the SES bankruptcy would be established by showing the Defendant committed an objectionable act, an insider relationship exists between SES and the Defendant, a disposition of SES's property or property of the SES's estate occurred, and the bankruptcies of the Defendant and the Defendant were contemporary.  The record shows that genuine disputes exist as to material facts underlying these issues.  Additionally, the Defendant has not supported his assertion that any transfer between SES and the Defendant was not in connection with the SES bankruptcy.

The Defendant has not met his burden under Rule 56 of showing an absence of evidence to support the Plaintiff's claim under § 727(a)(7).  Therefore, the Court will deny the Defendant's Motion for Summary Judgment on Count Five.

## Conclusion

For the reasons stated in this Memorandum Opinion, the Court will grant the Plaintiff's Motion for Leave to Amend the Complaint.  The Court will deny the Defendant's Motion for Summary Judgment on all counts.  The Court will grant partial summary judgment for the Plaintiff on Count Two – denial of discharge claim under 11 U.S.C. § 727(a)(3).  Therefore, the Court will deny the Defendant a discharge pursuant to 11 U.S.C. § 727(a)(3).  The Court will enter an order in accordance with this Memorandum Opinion.